IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL J. RAMIREZ,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., NDEX WEST, LLC, WELLS FARGO HOME MORTGAGE, INC., WELLS FARGO BANK SOUTHWEST, N.A., WACHOVIA MORTGAGE, FSB, and WORLD SAVINGS BANK, FSB,<br><br>Defendants.<br>_____ / | No. C 10-05874 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO STRIKE AS MOOT** |

**INTRODUCTION**

In this mortgage dispute, defendant Wachovia Mortgage moves to dismiss and strike. For the reasons stated below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**, and the motion to strike portions of the amended complaint is **DENIED AS MOOT**.

**STATEMENT**

Defendants all participate in the mortgage-servicing business. In September 2005, plaintiff Gabriel Ramirez acquired real property located at 3710 Bocmart Place in San Ramon with a mortgage loan of $600,000 that he obtained from World Savings Bank. The loan was secured by a deed of trust that identified Golden West Savings Association Service Company as the trustee. Plaintiff alleges that during the loan-application process, defendants' agents and brokers "overstated Plaintiff's income and/or ability to pay, understated his debt, and inflated the

appraised value of the Subject Property. The Defendants failed to verify or audit the information and avoided implementing reasonable measures that would have prevented or limited these fraudulent practices" (First Amd. Compl. ¶ 22). In addition, defendants allegedly "represented to borrowers that their lending practices remained unchanged when, instead, the focus of loan origination had shifted from prioritizing the long-term viability of the loan and ability of the borrower to repay, to maximizing short term origination volume so that loans could be sold on the secondary market irrespective of their long term viability" (*ibid.*).

World Savings, the original loan servicer, later changed its name to Wachovia Mortgage, FSB, on January 1, 2008. A notice of default was recorded on June 16, 2009. On July 30, 2009, NDEx West was substituted as a trustee for Golden West. On September 21, 2009, NDEx noticed a trustee's sale. The complaint seems to indicate that at around this time plaintiff contacted Wachovia in an effort to obtain a loan modification. Wachovia Mortgage became a division of Wells Fargo in November 2009, so from then on plaintiff was dealing with Wells Fargo. According to the complaint, "Wells Fargo agreed to postpone the noticed sale date of the Subject Property on a monthly basis due to the ongoing loan modification processing and in consideration for Mr. Ramirez' [sic] agreement to not file a civil law suit and/or bankruptcy petition" (*id.* ¶ 38). In August 2010, representatives from Wells Fargo again allegedly stated that Wells Fargo would postpone the sale. The property, however, was sold on August 30, 2010.[1]

Defendant has requested that judicial notice be taken of the following documents: (1) a deed of trust, recorded with the Contra Costa County Recorder's Office on September 8, 2005, as document number 2005-0341230-00; (2) a certificate of corporate existence issued by the Office of Thrift Supervision, dated April 21, 2006; (3) a letter written on the letterhead of the Office of Thrift Supervision, dated November 19, 2007; (4) a Charter of Wachovia Mortgage, dated December 31, 2007; (5) an Official Certification of the Comptroller of the Currency; (6) a notice of default, recorded with the Contra Costa County Recorder's Office on June 16, 2009, as document number 2009-0140716-00; (7) a substitution of trustee recorded with the Contra Costa

---

[1] The amended complaint alleges that Wells Fargo's further commitment to postpone the foreclosure sale as well as the sale took place in September, as opposed to August, 2010 (*id.* ¶¶ 40–41). Plaintiff now agrees that these events in fact took place in August (Opp. 1).

2

County Recorder's Office on July 30, 2009, as document number 2009-0184044-00; (8) a notice of trustee's sale, recorded with the Contra Costa County Recorder's Office on September 21, 2009, as document number 2009-0223035-00; and (9) a trustee's deed sale, recorded with the Contra Costa County Recorder's Office on September 10, 2010, as document number 2010-0192339-00.  Plaintiff does not object.  Defendant's request for judicial notice of these documents is **GRANTED**.  Documents (1) and (6)–(9) are matters of public record, and documents (2)–(5) were obtained from official government websites.  *See Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670 SBA, 2008 WL 4183981, at *5–6 (N.D. Cal. Sept. 9, 2008).  Judicial notice is appropriate under Federal Rule of Evidence 201.

Plaintiff originally filed this action as a *pro se* plaintiff in Contra Costa County Superior Court, on November 22, 2010.  Defendant removed the action.  Plaintiff, now represented by counsel, filed an amended complaint on February 10.  The amended complaint alleges ten claims: (1) violation of California Business and Professions Code Section 17200; (2) fraud; (3) negligent misrepresentation; (4) violation of California Civil Code Section 2923.5; (5) breach of contract; (6) promissory estoppel; (7) cancellation of instrument; (8) wrongful foreclosure; (9) aiding and abetting; and (10) injunctive relief.  Wachovia Mortgage now moves to dismiss and to strike portions of the amended complaint.

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that a defendant is liable for the misconduct alleged.  While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

### A. ADEQUACY OF STATE-LAW CLAIMS

#### 1. Violation of California Business and Professions Code Section 17200, Fraud, and Negligent Misrepresentation

Plaintiff's first claim alleges that defendants violated California Business and Professions Code Section 17200 by making "untrue or misleading statements" about their process for reviewing loan applications, their knowledge in issuing loans and avoiding foreclosures, the appraisal value of the property, their compliance with California law in pursuing foreclosure, and their intention to postpone foreclosure (First Amd. Compl. ¶ 44). In his second claim, plaintiff alleges that defendants made "fraudulent misrepresentations" about their use of standard industry practices to obtain the financing for the property, the appraisal value of the property, their expectation that the property value would rise quickly and plaintiff could use the equity in the property to refinance, and their intention to postpone foreclosure (*id.* ¶ 49). In his third claim, plaintiff alleges that defendants made "negligent misrepresentations" about the same matters as alleged in the second claim (*id.* ¶ 57). Defendant argues that these claims should be dismissed because they are not pled with the particularity required by Federal Rule of Civil Procedure 9(b).

Rule 9(b)'s heightened pleading standard applies to all three claims, as all are based in fraud. As for plaintiff's first claim, UCL claims that sound in fraud are subject to Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). A "fraudulent" business practice under Section 17200 is "one which is likely to deceive the public," and "may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006) (internal quotation marks omitted). Here, plaintiff alleges that defendants violated Section 17200 by making "untrue or misleading statements." Plaintiff clearly alleges fraud in his second claim. Plaintiff does not dispute that Rule 9(b) applies to his third claim for negligent misrepresentation. In addition, other members of this district have similarly applied Rule 9(b)'s heightened pleading standard to claims for negligent misrepresentation. *See, e.g.*, *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, No. C 09–03780 SI, 2011 WL 1134321, at *16 (N.D. Cal. Mar. 27, 2011). This order will analyze plaintiff's negligent misrepresentation claim under Rule 9(b)'s heightened pleading standard.

4

Federal Rule of Civil Procedure 9(b) requires that in all averments of fraud the circumstances constituting fraud must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Rule 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

Here, plaintiff has not pled his first three claims with the required particularity. Not only does he fail to allege the identities of the individuals at the corporate defendants who made the misrepresentations, he does not allege which corporate defendant was responsible for making them. In addition, he does not allege the content of the misrepresentations or when they were made. Indeed, plaintiff concedes that "a precise date and time is not alleged," and "begs leave of the Court to amend his complaint in this respect" (Opp. 18).

Plaintiff argues that in instances of corporate fraud, Rule 9(b)'s specificity standard is relaxed "as to matters within the opposing party's knowledge." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). When it is difficult to attribute corporate fraud to a particular individual, however, "the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Ibid.* Here, even assuming this standard applies, plaintiff has not met it. He has not alleged the misrepresentations with particularity, nor has he identified the role of each of the defendants in the misrepresentations.

Accordingly, this order **GRANTS** defendant's motion to dismiss the first, second, and third claims. As this issue is dispositive, defendant's alternative arguments for dismissal of these claims will not be addressed. In addition, defendant's motion to strike paragraph 55 of the amended complaint and paragraph 5 of the prayer for relief — which both relate to punitive damages sought under the second claim — is **DENIED AS MOOT**.

5

### 2. Violation of California Civil Code Section 2923.5

In his fourth claim, plaintiff alleges that "Plaintiff was never contacted by Defendants, in person or by telephone, following default on the mortgage, to assess his financial situation and to explore options to avoid foreclosure," in violation of California Civil Code Section 2923.5 (First Amd. Compl. ¶ 64). In addition, plaintiff alleges that "Defendants have failed to file a proper declaration in violation of this requirement, instead filing a document signed by a declarant who provides no basis for her personal knowledge of the facts to which she attests," in violation of Section 2923.5(b) (*id.* ¶ 68).

A mortgagee may not file a notice of default pursuant to Section 2924 unless the mortgagee first "contact[s] the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." CAL. CIV. CODE § 2923(a)(1)–(2). In addition, "[a] notice of default filed pursuant to Section 2924 shall include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required pursuant to subdivision (h)." *Id.* § 2923.5(b). "The available, existing remedy [for a violation of Section 2923.5] is found in the ability of a court in section 2924g, subdivision (c)(1)(A), to postpone the [foreclosure] sale until there has been compliance with section 2923.5." *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 223 (2010).

It is a mystery to the Court why this claim is in the complaint, as plaintiff's counsel conceded at oral argument that there is no remedy for this alleged violation inasmuch as the foreclosure sale has already occurred (*see also* Opp. 20 ("In the unlikely event that the foreclosure sale on the Subject Property is ultimately shown to be valid, then Defendant is technically correct in that its violation of this statute is a wrong without a remedy.")). At oral argument, it also became clear that the claim for violation of Section 2923.5 was being asserted primarily as a "predicate act" to plaintiff's Section 17200 claim rather than as a stand-alone claim, and that, as a stand-alone claim, there is no remedy at this stage. This begs the further question how a violation of Section 2923.5 can be a predicate act under Section 17200. This issue was not briefed or raised in the motion. Therefore, its resolution will be reserved for a

1  future date if plaintiff reasserts a Section 17200 claim based on a predicate violation of Section

2  2923.5.  For now, defendant's motion to dismiss this stand-alone claim is **GRANTED**.

### 3. Breach of Contract

In his fifth claim, plaintiff alleges that "Defendant Wachovia entered into a contract by which Defendant agreed to postpone the foreclosure sale date noticed for the Subject Property (alternatively to not execute the foreclosure sale upon the Subject Property) while the lender continued to process Mr. Ramirez's application for a loan modification and Mr. Ramirez agreed not to file a bankruptcy petition or civil action. . . . Defendant manifestly breached the bilateral oral contract by executing the foreclosure sale on September 8, 2010"[2] (First Amd. Compl. ¶¶ 74, 78).

Defendant argues that although plaintiff characterizes this agreement as a discrete oral contract, it would in fact be a modification of the deed of trust.  According to defendant, the deed of trust provides the lender with the power of sale upon a payment default, and it further provides that the security instrument may be modified or amended only by a written agreement signed by the borrower or lender.  The power of sale provided for in the deed of trust, therefore, cannot be modified by oral representations.

Nonetheless, the allegations support a plausible claim that plaintiff was tricked into not filing an injunction suit to stop the foreclosure based on a promise that defendant would modify the loan.  If true, this could work as an estoppel to asserting the clause in the contract.  *See Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976) (explaining that the elements for promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.").  The fifth claim is therefore sustained for the time being, and defendant's motion to dismiss as to this claim is **DENIED**.

---

[2] As explained above, plaintiff now agrees that the foreclosure sale was in fact executed on August 30, 2010.

7

### 4. **Promissory Estoppel**

In his sixth claim, plaintiff alleges that "an agent of Defendant made an unambiguous promise to Mr. Ramirez to postpone the date noticed for the foreclosure sale on the Subject Property. . . . In reliance on this promise, Mr. Ramirez did not file a bankruptcy petition or civil action seeking a temporary retaining order, both of which would have provided a measure of protection" (First Amd. Compl. ¶¶ 82, 85).

Plaintiff has accordingly stated a plausible claim for promissory estoppel by alleging that defendant promised to postpone the foreclosure sale, plaintiff relied on this promise by not filing a bankruptcy petition or civil action, plaintiff's reliance was reasonable and foreseeable, and plaintiff suffered a loss as a result of his reliance. Defendant attempts several arguments in response.

*First*, defendant argues that "the promise alleged is not clear and unambiguous in its terms" because the date for the foreclosure sale was originally scheduled for the previous year (Br. 9). Simply because the original date for the foreclosure sale had passed, however, does not make the promise unclear and ambiguous. A promise to execute a foreclosure sale after a certain date is sufficiently clear and unambiguous.

*Second*, defendant argues that plaintiff fails to allege that he relied to his detriment on defendant's promise. Plaintiff alleges, however, that in reliance on defendant's promise, he did not file a bankruptcy petition or civil action. This is sufficient for detrimental reliance. Although defendant argues that a gratuitous oral promise to postpone a foreclosure sale is unenforceable, citing *Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031, 1039 (2010), defendant's promise here was not gratuitous.

*Third*, defendant argues that there are no allegations in the amended complaint that plaintiff's acts in reliance were foreseeable to defendants. Plaintiff alleges, however, that "Wells Fargo agreed to postpone the noticed sale date of the Subject Property on a monthly basis due to the ongoing loan modification processing and in consideration for Mr. Ramirez' [sic] agreement to not file a civil law suit and/or bankruptcy petition" (First Amd. Compl. ¶ 38). This suggests

8

that Wells Fargo was aware of plaintiff's reliance on defendant's promise to postpone the foreclosure sale. Accordingly, defendant's motion to dismiss plaintiff's sixth claim is **DENIED**.

### 5. Cancellation of Instrument

In his seventh claim, plaintiff seeks cancellation of the deed of trust. Plaintiff alleges that the deed of trust is "voidable in that there is no enforceable underlying promissory note for the Deed of Trust" (*id.* ¶ 90).

Under California law, rescission of a contract cannot be granted unless plaintiff restores consideration (the amount due under the loan). CAL. CIVIL CODE § 1691(b); *see also Touli v. Santa Cruz County Title Co.*, 20 Cal. App. 2d 495, 499–500 (1937) (explaining that rescission of a deed of trust "is controlled by the provisions of section 1689 et seq. of the Civil Code and particularly by the provisions of section 1691, subdivision 2, declaring that the actor must restore to the other party everything of value which he has received from him under the contract" (internal quotation marks omitted)). Here, plaintiff cannot rescind the deed of trust because he has not alleged tender nor the ability to tender.

Plaintiff argues that "[a]s a result of the alleged artificial inflation of the value of the Subject Property, the tender amount required would be in excess of the actual worth of the property. . . . Such a result would be entirely inequitable and demands waiver of the tender rule" (Opp. 14). In support of his proposition that tender is not required when it would be inequitable, plaintiff cites *Humboldt Savings Bank v. McCleverty*, 161 Cal. 285, 290–91 (1911). *Humboldt*, however, concerns a plaintiff's right to set aside a foreclosure sale, not to cancel a deed of trust. It is inapplicable here.

In addition, plaintiff argues that "[b]ecause the underlying Deed of Trust was obtained through fraud, among other wrongdoings, the Deed of Trust is *void*. Consequently any trustee's sale subsequently executed would be equally invalid" (Opp. 15). In support of this proposition, plaintiff cites *Scott v. Security Title Insurance & Guarantee Co.*, 9 Cal. 2d 606, 610–11 (1937). *Scott*, like *Humboldt*, concerns a plaintiff's right to set aside a foreclosure sale. It is therefore also inapplicable here.

9

Accordingly, defendant's motion to dismiss the seventh claim is **GRANTED**. As the tender issue is dispositive, defendant's alternative arguments to dismiss this claim will not be addressed.

### 6. Wrongful Foreclosure

In his eighth claim, plaintiff "requests that the foreclosure proceeding be vacated because Defendants' reprehensible conduct throughout this transaction provides grounds for wrongful foreclosure" (First Amd. Compl. ¶ 93). Defendant argues that "[t]o maintain any type of wrongful foreclosure claim, a plaintiff must establish tender of the *full amount of the indebtedness*" (Br. 9 (emphasis added)). Defendant's argument is meritless. The amount of debt relevant here is not the total amount still owed under the loan, but the amount by which plaintiff defaulted. *See* CAL. CIV. CODE § 2924c. Defendant's motion to dismiss the eighth claim is **DENIED**.

### 7. Aiding and Abetting and Injunctive Relief

Plaintiff's ninth claim alleges "aiding and abetting," and his tenth claim alleges "injunctive relief." Plaintiff concedes that "aiding and abetting" is a theory of liability, rather than a claim (Opp. 23). Similarly, plaintiff concedes that "injunctive relief" is a remedy, rather than a claim (*id.* at 23–24). Accordingly, this order **GRANTS** defendant's motion to dismiss the ninth and tenth claims.

### B. PREEMPTION

The Home Owners Loan Act authorizes federally chartered savings associations. *See* 12 U.S.C. 1461. In enacting HOLA, Congress established the entity now known as the Office of Thrift Supervision and gave its director plenary authority to issue regulations governing federal savings and loans. *See* 12 U.S.C. 1462a. In 1996, OTS issued 12 C.F.R. 560.2, which provides that "OTS [] occupies the entire field of lending regulation for federal savings associations." The National Bank Act, in contrast, authorizes federally chartered national banks. *See* 12 C.F.R. 34.1(b). Under the National Bank Act, regulations promulgated by the Office of the Comptroller of the Currency relating to mortgage lending preempt state laws that relate to "terms of credit," "disclosure and advertising," "disbursements and repayments," and "rates of interest," among other categories. *See* 12 C.F.R. 34.4(a).

10

1  The judicially-noticed documents reviewed above show that plaintiff signed his loan with
2  World Savings, which was a federally chartered savings association. World Savings later
3  changed its name to Wachovia Mortgage, FSB, on January 1, 2008. Wachovia Mortgage became
4  a division of Wells Fargo in November 2009. Wells Fargo is a federally chartered national bank.

5  This order will not decide whether the first, second, third, fourth, and seventh claims in
6  plaintiff's complaint are preempted by HOLA because they have not been adequately pled under
7  state law. As to the fourth claim, it is true that the notice of default was recorded prior to the
8  merger of Wachovia and Wells Fargo and therefore while HOLA was applicable. The Court is
9  unwilling, however, to reach the preemption issue until after it is settled in this case whether the
10 alleged Section 2923.5 violation is in play and even viable. That is, until the Court is satisfied
11 that a proper state-law claim involves Section 2923.5, it is premature to evaluate whether it would
12 be preempted.

13 Defendant also argues, however, that plaintiff's fifth and sixth claims are preempted by
14 HOLA. As to these claims, Wells Fargo allegedly promised to postpone the foreclosure sale in
15 August 2010, which was after the merger took place in November 2009. Consequently, because
16 Wells Fargo is a federally chartered national bank, the National Bank Act governs preemption as
17 to the fifth and sixth claims. This order declines to find that the fifth and sixth claims are
18 preempted at this time.

19 This order is without prejudice to defendant raising its preemption arguments again in a
20 motion for summary judgment or at trial.

**CONCLUSION**

22 For the foregoing reasons, defendant's motion to dismiss is **GRANTED IN PART AND**
23 **DENIED IN PART**, and its motion to strike portions of the amended complaint is **DENIED AS**
24 **MOOT**. Plaintiff's fifth, sixth, and eighth claims remain. Plaintiff's first, second, third, fourth,
25 seventh, ninth, and tenth claims are dismissed.

26 Plaintiff may seek leave to file an amended complaint and shall have **FOURTEEN**
27 **CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day
28 calendar, for leave to file an amended complaint. A proposed amended complaint must be

11

1  appended to the motion, and the motion should clearly explain how the amendments to the
2  complaint cure the deficiencies identified by this order.

4  **IT IS SO ORDERED**.

6  Dated: April 27, 2011.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE